IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CINDY LOU McKINLEY,

              Plaintiff,

      v.

UNITED STATES OF AMERICA; ROBERT
A. McDONALD, in his capacity as Secretary
of Veterans Affairs[1]; ANNETTE M.
MATTHEWS, MD; CAROL S. UTTERBERG,
PMHNP; ROBERT A. TELL, LCSW;
LORRAINE T. ANGER, RN; DANIEL SPINAS;
JOHN DOES #1–3,

              Defendants.

No. 3:14-cv-01931-HZ

OPINION & ORDER

Cindy Lou McKinley

      Pro se plaintiff

//

//

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Robert A. McDonald, Secretary of Veterans Affairs, is substituted for former Acting Secretary Sloan D. Gibson.

OPINION & ORDER - 1

Billy J. Williams
Acting United States Attorney
District of Oregon

James E. Cox, Jr.
Assistant United States Attorney
United States Attorney's Office
District of Oregon
1000 S.W. Third Ave., Ste. 600
Portland, OR 97204

     Attorneys for Defendants

HERNÁNDEZ, District Judge:

     Pro se plaintiff Cindy Lou McKinley is a veteran who receives medical care at the Portland Veterans Affairs Medical Center ("VAMC") in Portland, Oregon. She brings claims against the United States Department of Veterans Affairs ("VA" or the "Government") and numerous VA employees (collectively "Individual Defendants") in their individual capacities arising from two incidents at the Portland VAMC on January 3 and 10, 2014.

     McKinley alleges fives claims against the various defendants, including medical malpractice, violations of the False Claims Act, the Americans with Disabilities Act ("ADA"), the Privacy Act, and her constitutional rights under the Fourth and Fifth Amendments. The Government and the Individual Defendants have moved to dismiss most of these claims.

     This Opinion & Order addresses the VA's motion to dismiss for lack of jurisdiction and for failure to state a claim [29], the Individual Defendants' motion to dismiss for failure to state a claim [34], and McKinley's motion for leave to file an amended complaint [33]. For the reasons stated, the VA's motion to dismiss is granted, the Individual Defendants' motion to dismiss is granted, and McKinley's motion for leave to file a second amended complaint is denied. McKinley's medical malpractice claim survives, however, in slightly different form—the law

requires her to bring that claim against the Government, not against individual medical providers at the Portland VAMC.

BACKGROUND

On January 3, 2014, McKinley visited with Carol Utterberg, a Psychiatric-Mental Health Nurse Practitioner ("PMHNP") at the Portland VAMC. Amended Complaint ("Amd. Compl."), ECF No. 28, at 8. Although McKinley disputes exactly what transpired, there is no dispute that at some point during their meeting, Utterberg became concerned that McKinley posed a danger to herself and others. Amd. Compl. at 8. According to Utterberg's notes of the appointment, McKinley expressed suicidal ideation and a plan to attack members of a spiritual center McKinley once attended. Cox Declaration ("Decl.") Exhibit ("Ex.") 1, ECF No 35-1, at 3. [2] McKinley alleges Utterberg's notes "falsely characterize [her] as dangerous and homicidal." Amd. Compl. at 9. After discussing McKinley's willingness to engage in safety planning, McKinley left Utterberg's office. Plaintiff's Response to Motion to Dismiss ("Pl. Resp."), ECF No. 39, at 9.

Utterberg alerted VA police and Dr. Annette Matthews, a VA psychiatrist, about the situation. Amd. Compl. 8–9. McKinley was "cornered" by the VA police in a stairwell at the Portland VAMC when Dr. Matthews arrived on the scene. Amd. Compl. at 11. After a brief meeting with McKinley, Dr. Matthews signed an order to hold McKinley involuntarily at the Portland VAMC, based on McKinley's threats to "kill self [with] a gun," her "[p]ossible psychotic ideation of another staff member," and that McKinley posed a "[d]anger to self [and]

---

[2] To give a complete narrative background of the January 3 incident, the Court refers to certain exhibits, but notes where McKinley's version of the facts departs from them. In analyzing the legal sufficiency of her claims, the Court assumes the truth of McKinley's alleged facts. Am. Family Ass'n, Inc. v. City & Cnty. of S.F., 277 F.3d 1114, 1120 (9th Cir. 2002)

others." Amd. Compl. at 12; Cox. Decl. Ex. 2, ECF No. 35-2, at 1. McKinley disputes Dr.

Matthews's report, and alleges that the mental health hold violated her constitutional rights.

During the encounter, McKinley was accompanied by her post-traumatic stress disorder

("PTSD") service dog. Amd. Compl. at 11; Cox Decl. Ex. 2 at 2. The VA police informed her

that her service dog would not be able to stay with her during the mental health hold, and tried to

work with her to find kennel accommodations. Cox. Decl. Ex. 2 at 2. McKinley alleges that the

VA police "threatened to take my service dog to the pound." Amd. Compl. at 11. McKinley then

admits that, while in police presence, she ingested twelve Klonopin tablets to "manage the

extraordinary stress . . . placed on her by the entire incident." Pl. Resp. at 9. After she told the

VA police that she had ingested so many pills, the officers consulted with a VA doctor and

escorted her to the VA emergency department. Cox. Decl., Ex. 2 at 3. She was admitted for

treatment, but she was not allowed to bring her service dog into the emergency room with her.

Amd. Compl. at 14. McKinley claims that this violated the Americans with Disabilities Act and

her Fourth Amendment rights against unreasonable seizure.[3]

McKinley also asserts that various medical providers at the Portland VAMC were able to

access her complete medical records, including notes from her "private therapy sessions,"

without her consent. Amd. Compl. at 20–22. She claims that the VA's policy of sharing medical

records among providers at the VA violates her rights under the Privacy Act, a federal law that

restricts government agencies from sharing certain information collected about individuals.

She filed her initial complaint on July 28, 2014, and subsequently filed her First

Amended and Supplemental Complaint, now the operative pleading, on December 10, 2014.

---

[3] McKinley's complaint also alleges constitutional violations for an encounter with an unnamed VA
police officer on January 10. However, those events are not at issue in either the Government's or the
Individual Defendants' motions, and therefore the Court does not address them at this time.

ECF No. 28. The Government now moves to dismiss McKinley's claims under the False Claims

Act, the ADA, and the Privacy Act. Defendants' Motion to Dismiss ("Def. Mot."), ECF No. 29.

The Individual Defendants move to dismiss McKinley's malpractice claims, constitutional

claims, and Privacy Act claims against them in their individual capacities. Individual

Defendants' Motion to Dismiss ("Indv. Def. Mot."), ECF No. 34.

McKinley conceded that her claims under the False Claims Act (claim II) and the ADA

(claim III) fail as a matter of law. See Pl. Motion to Amend Complaint ("Pl. Mot. to Amd."),

ECF No. 33, at 2. Her remaining claims include allegations of medical malpractice against

several of the Individual Defendants pursuant to the Federal Tort Claims Act (claim I), civil

rights violations for unlawful detention, unlawful seizure, and denial of due process against

numerous individuals (claim IV), and violations of the Privacy Act (claim V) against the VA and

individual defendant Robert Tell. Amd. Compl. at 6–19. Her motion for leave to amend

primarily attempts to address deficiencies in her Privacy Act claims. See Pl. Mot. to Amd. at 1.

STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) asks the

court to test the sufficiency of the plaintiff's claims. Navarro v. Block, 250 F.3d 729, 732 (9th

Cir. 2001). Allegations of material fact are taken as true and construed in the light most favorable

to the nonmoving party. Am. Family Ass'n, Inc. v. City & Cnty. of S.F., 277 F.3d 1114, 1120

(9th Cir. 2002). The court is not, however, required to assume the truth of mere conclusory

allegations. Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). A

complaint that alleges grounds for relief based on nothing "more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action" will be dismissed. Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 555 (2007).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Aschcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The complaint must state well-pleaded facts that "permit the court to infer more than a mere possibility of misconduct . . . ." Id. at 679. See also Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)") (citations omitted).

The Ninth Circuit instructs courts to "construe pro se filings liberally." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). A pro se complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." Id. (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)). A pro se litigant will be given leave to amend his or her complaint unless it is clear that the deficiencies of the complaint cannot be cured by amendment. Lopez v. Smith, 203 F.3d 1122, 1130–31 (9th Cir. 2000).

## DISCUSSION

1. Federal Tort Claims Act, Medical Malpractice

McKinley alleges that on January 3, 2014, "Annette Matthews, MD and Erick Turner, MD signed a two-physician hold on [her] without performing the 'face-to-face' examination required by law and in accordance with the ethics and evaluation guidelines set forth by the American Psychiatric Association." Amd. Compl. at 7. McKinley also brings tort claims for malpractice under the Federal Tort Claims Act ("FTCA") against individual defendants PMHNP Utterberg and Ms. Lorraine Anger, a registered nurse who treated McKinley in the emergency

room at the Portland VAMC. Pl. Resp. at 10–11, 17–22. These defendants have all moved to dismiss McKinley's tort claims against them in their individual capacities.

"When federal employees are sued for damages for harms caused in the course of their employment, the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671–2680, generally authorizes substitution of the United States as the defendant." Hui v. Castaneda, 559 U.S. 799, 801 (2010). Furthermore, Congress has granted individual VA medical providers immunity from liability for "damages for personal injury, including death, allegedly arising from malpractice or negligence of a health care employee of the Administration in furnishing health care or treatment while in the exercise of that employee's duties in or for the Administration[.]" 38 U.S.C. § 7316(a)(1) (hereinafter the "VA Immunity Statute"). That statute explains that a tort claim against the Government brought under the FTCA is the exclusive remedy for a plaintiff who sues a VA health care employee for negligence or malpractice.

All of the individuals against whom McKinley brings an allegation of malpractice—Ms. Anger, Ms. Utterberg, Dr. Matthews, and Dr. Turner—were medical providers of some kind working at the Portland VAMC. See Complaint, ECF No. 1, at 1. All of the underlying events took place at the Portland VAMC and were connected with medical treatment McKinley received there. These defendants assert that they are VA employees and were acting within the scope of their employment. Indv. Def. Reply, ECF No. 41 at 3, 6–9. The only reasonable inference to draw is that all of these individuals were "exercising [his or her] duties . . . for the [Veterans] Administration" during the events that precipitated McKinley's medical malpractice claim, and are thus entitled to the protection of the VA Immunity Statute. See 38 U.S.C. § 7316(a)(1). Therefore, McKinley's FTCA claims for malpractice against these VA medical

providers for treatment furnished at a VA medical center must be brought against the Government, not against the individuals.

McKinley argues that Anger and Utterberg acted outside the scope of their employment by "falsifying" and "omit[ing] critical information from" her medical records. Pl. Resp. at 10, 17–18. Even accepting that allegation as true, the VA Immunity Statute instructs that claims against individual VA medical providers for intentional torts, such as "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, **misrepresentation, deceit**, or interference with contract rights" must be brought against the Government. 38 U.S.C. § 7316(f) (emphasis added); see also Ingram v. Faruque, 728 F.3d 1239, 1248–49 (10th Cir. 2013) (explaining that Congress specifically passed the VA Immunity Statute to "expand the circumstances under which the Federal government accepts liability for the acts of its employees acting within the scope of their employment so as to cover actions of VA health-care employees that are characterized as intentional torts under the laws of various states.") (quoting Franklin v. United States, 992 F.2d 1492, 1500 (10th Cir. 1993); H.R.Rep. No. 100–191, 100th Cong., 2d Sess. 19 (1988), *reprinted in* 1988 U.S.C.C.A.N. 502–03).

Therefore, McKinley's medical malpractice claims against Dr. Matthews, Dr. Turner, Anger, and Utterberg are dismissed. Moreover, because McKinley's proposed second amended complaint fails to state any facts from which the Court can draw the reasonable inference that any of these individual defendants were acting outside the scope of their employment in their interactions with McKinley, the Court denies McKinley's motion for leave to amend as it relates to these claims.

That does not mean, however, that McKinley's medical malpractice claim is dismissed altogether. Her FTCA claim against the Government for medical malpractice by its employees

still stands. See Def. Reply, ECF No. 41, at 13 ("[McKinley] has pled an FTCA claim in her Amended Complaint, and the government has not moved to dismiss that claim.").

### 2. Civil Rights Violations

McKinley's fourth claim for relief alleges that her constitutional rights were violated in the following ways: (1) unidentified VA police officers unlawfully detained her at the Portland VAMC on January 3, 2014; (2) unidentified VA police officers unlawfully seized her service animal at the emergency room at the Portland VAMC on January 3, 2014; (3) an unnamed VA police officer unlawfully detained her for questioning at the Portland VAMC on January 10, 2014; (4) an unnamed VA police officer unlawfully seized her cell phone at the Portland VAMC on January 10, 2014; and (5) the two-physician psychiatric hold authorized by Drs. Matthews and Turner on January 3, 2014, violated her due process rights.[4]

The Court construes her claims against these individual defendants as Bivens claims. In Bivens, the Supreme Court recognized a private right of action for money damages against federal officials alleged to have violated a citizen's constitutional rights despite the absence of any federal statute creating liability. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

The Individual Defendants move to dismiss McKinley's claims based on her January 3, 2014, involuntary hospitalization on the basis of qualified immunity. They argue that, even assuming McKinley's allegations are true, the unidentified VA police officers are not individually liable because their actions did not violate one of McKinley's "clearly established" constitutional rights. Indv. Def. Mot. at 5–6.

---

[4] As mentioned above, neither the VA's motion nor the Individual Defendants' motion address McKinley's claims arising from the January 10 incident. Accordingly, the Court does not analyze those claims at this time.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In other words, a government actor who reasonably believes that his or her conduct complies with the law is entitled to qualified immunity from a lawsuit for money damages. Frank v. Cascade Healthcare Cmty., Inc., No. 6:11-CV-06402-AA, 2014 WL 793073, at *9 (D. Or. Feb. 23, 2014) (citing Pearson v. Callahan, 555 U.S. 223, 244 (2009)).

    a.   Unlawful Detention on January 3, 2014

McKinley alleges that unidentified VA police officers improperly took her into custody on January 3, 2014, based on a "two physician hold form that did not have [McKinley's] name on it anywhere." Amd. Compl. at 16. Even assuming McKinley's allegations are true, they are not sufficient to show the VA police officers who implemented the hold violated one of her "clearly established" constitutional rights.

There is no dispute that Dr. Matthews issued the psychiatric hold for McKinley and that the VA officers were acting pursuant to that authorization. McKinley does not allege that the VA police mistakenly identified her as the subject of the hold. Whether McKinley's name was immediately added to her paperwork does not have any bearing on the lawfulness of the VA police officers' actions in detaining her as she attempted to leave the Portland VAMC. The VA police officer's conduct was not so "patently violative" of McKinley's constitutional rights that the officers "would have known without guidance from the courts" that their actions were unlawful. Landry v. Berry, 533 F. App'x 702, 702–03 (9th Cir. 2013) (quoting Boyd v. Benton

Cnty., 374 F.3d 773, 781 (9th Cir. 2004). Therefore, the VA officers are entitled to qualified

immunity against McKinley's claims that they unlawfully detained her on January 3, 2014.

       b.   Unlawful Seizure of McKinley's Service Animal on January 3, 2014

McKinley alleges that VA police officers seized her PTSD service dog prior to her

admission to the emergency room at the Portland VAMC, "thereby violating ADA regulations

and Department of Justice clarifications regarding introduction of service animals in emergency

rooms" and her rights under the Fourth Amendment. Amd. Compl. at 14 17.

She relies on language from a Department of Justice publication which states the "[a]

service animal may accompany its handler to such areas as . . . the emergency room[.]" Pl. Resp.

at 16–17 (citing Nondiscrimination on the Basis of Disability by Public Accommodations and in

Commercial Facilities, 28 C.F.R. Part 36, U.S. Department of Justice, Civil Rights Division,

published Sept. 15, 2010). However, that language merely establishes that the Department of

Justice believes a service animal may be allowed in such areas consistent with CDC guidelines

regarding infection control. It does not create an obligation on hospitals to permit service animals

in the emergency room in every circumstance. Federal regulations allow a hospital to limit

service animals to only those places where the public is allowed to go. See 28 C.F.R. §

36.302(c)(7) ("Individuals with disabilities shall be permitted to be accompanied by their service

animals in all areas of a place of public accommodation where members of the public, program

participants, clients, customers, patrons, or invitees, as relevant, are allowed to go.").

Therefore, McKinley cannot not demonstrate a "clearly established" constitutional right

to have her service animal accompany her to the emergency room at the Portland VAMC. See

Pool v. Riverside Health Servs., Inc., No. 94-1430-PFK, 1995 WL 519129, at *5 (D. Kan. Aug.

25, 1995) (explaining that hospital policy against allowing service animals in the emergency

room did not violate the ADA: "Service animals provide to thousands of Americans a critical means of access to the world. Federal policy as reflected in the ADA is designed to support this access. This policy, however, is not unlimited; it does not compel hospitals to jeopardize the health and safety of their patients."). Accordingly, the VA police officers are entitled to qualified immunity against McKinley's claim for unlawful seizure of her service animal.

### c. Due Process

McKinley alleges that Drs. Matthews and Turner violated her due process rights by authorizing the two physician psychiatric hold without conducting a "face-to-face examination as required by law and the American Psychiatric Association." Amd. Compl. at 18 (internal quotation marks omitted).

The Oregon statute that authorizes a practitioner to institute an emergency psychiatric hold does not mention any face-to-face examination. See ORS 426.232. The Oregon regulations that control the standards for the so-called "hospital hold" provide that "[o]nly a physician with admitting privileges or on staff at a hospital approved by the Division and who has completed a face-to-face examination of the person may retain the person in custody in the hospital as provided by ORS 426.232." Or. Admin. R. 309-033-0250. The regulations only require the physician to complete a face-to-face examination; it does not require the physician to conduct the examination in any particular way.

There is no dispute that Dr. Matthews met face-to-face with McKinley. McKinley's complaint describes an interaction with Dr. Matthews of about ninety seconds in a stairwell at the Portland VAMC. Amd. Compl. at 11–12. McKinley admits that she met Dr. Matthews and McKinley's description of the encounter shows that Dr. Matthews had the opportunity to examine McKinley in person. Amd. Compl. at 11–12. Those facts establish that some face-to-

face examination occurred, and that is all that Oregon law requires. While McKinley may believe the examination should have been more extensive, she fails to plead any facts showing that Dr. Matthews's authorization of the emergency hold after consulting with Nurse Practitioner Utterberg and conducting an in-person examination of McKinley was a violation of her "clearly established" constitutional rights.

McKinley's claims against Dr. Turner are also dismissed because he was merely the "consulting" physician to Dr. Matthews's hold authorization, and thus he was not required to conduct an additional "face-to-face" examination. While two physicians are involved in the hospital hold process, the Oregon regulations and statues that authorize the hospital hold only require that one physician conduct an in-person examination. ORS 426.232; OAR 309-033-0250 (defining "hospital hold" as "the taking of a person into custody by order of **a physician** pursuant to ORS 426.232.") (emphasis added).

Furthermore, to the extent McKinley argues that Drs. Matthews and Turner failed to comply with professional standards as set forth by the American Psychiatric Association, that is a medical malpractice claim sounding in negligence. As explained above, Congress has granted VA medical providers with immunity from suit for malpractice under the VA Immunity Statute. 38 U.S.C. § 7316(a)(1). The VA Immunity Statute requires that any claim against VA medical providers related to their treatment be brought against the Government, not against an individual.

Additionally, where an individual defendant is immune from suit, the plaintiff cannot pursue an implied cause of action under Bivens against him or her. Hui, 559 U.S. at 806–08 (holding that a federal statute providing immunity from suit for Public Health Services employees acting in the scope of their employment precluded a Bivens claim against the

individual providers). Because Drs. Matthews and Turner are immune from suit, McKinley's Bivens claims against them fail as a matter of law.

As explained above, the Government has not moved to dismiss McKinley's malpractice claims against it. McKinley must pursue her claims about the treatment she received at the Portland VAMC against the Government, not against the individuals. Accordingly, individual defendants Drs. Matthews and Turner are dismissed.

### 3. Privacy Act

Finally, McKinley's fifth claim for relief alleges that the VA violated her rights under the Privacy Act, codified at 5 U.S.C. § 552a. Amd. Compl. at 20–22. The Privacy Act was designed to 'protect the privacy of individuals' through regulation of the 'collection, maintenance, use, and dissemination of information' by federal agencies." Rouse v. U.S. Dep't of State, 567 F.3d 408, 413 (9th Cir. 2009) (quoting 5 U.S.C. § 552a note). To succeed on a Privacy Act claim, a plaintiff must show 1) the agency disclosed information contained within a system of records; 2) the disclosure was improper; 3) the disclosure was intentional or willful, and 4) the plaintiff was adversely affected by the disclosure. Tungjunyatham v. Johanns, 500 F. App'x 686, 689 (9th Cir. 2012) (citing Swenson v. U.S. Postal Service, 890 F.2d 1075, 1077 (9th Cir.1989)).

McKinley alleges Privacy Act claims against the VA in four separate counts. Her first count alleges that her "private therapy session notes were explicitly shared" with various health care providers at the Portland VAMC. Amd. Compl. at 20. These disclosures were not "improper" under the Privacy Act, because these types of disclosures fall under the "need to know" and "routine use" exceptions to the prohibition of disclosure under 5 U.S.C. § 552a(b)(1) and (3). Moreover, McKinley has failed to plead facts showing that these disclosures were made "without grounds for believing [they were] lawful" or in "flagrant[] disregard[]" for her rights

under the Privacy Act. <u>Tungjunyatham</u>, 500 F. App'x at 689 (citing <u>Covert v. Harrington</u>, 876 F.2d 751, 756 (9th Cir.1989)).

"Under 5 U.S.C. § 552a(a)(7), the use of the information disclosed under the routine use exception must be compatible with the purpose for which the information was collected." <u>Puerta v. Dep't of Health & Human Servs.</u>, 229 F.3d 1158 (9th Cir. 2000). The disclosure must be "within the scope of the agency's routine use regulations as published in the Federal Register." <u>Id.</u> (citing 5 U.S.C. § 552a(e)(4)(D)). The agency invoking the routine use exception must have informed the individual on the form used to collect information or on a separate form that can be retained by the individual about the routine uses that may be made of the information. <u>Id.</u> (citing 5 U.S.C. § 552a(e)(3)(C); <u>Covert v. Harrington</u>, 876 F.2d 751, 755–56 (9th Cir. 1989)).

The disclosures at issue here met those requirements. The information contained in McKinley's treatment, counseling, and psychotherapy notes was collected in an effort to provide her medical treatment, and the records were disclosed to other VA health professionals for that same purpose. VA regulations provide that patient records can be used for "such purposes as: [o]ngoing treatment of the patient [and] providing clinical and administrative support to patient medical care." Privacy Act of 1974; System of Records, 69 FR 18428-02. Furthermore, those same regulations provide that the VA can disclose "relevant health care information . . . to health and welfare agencies . . . in situations where the VA needs to act quickly in order to provide basic and/or emergency needs for the veteran." Privacy Act of 1974; System of Records, 69 FR 18428-02, Routine Use No. 40. There are numerous other "routine uses" that allow the VA to disclose a veteran's health information to other government agencies, outside contractors, and individuals with whom the VA works to provide health care to veterans.

In her complaint and motion to amend, McKinley alleges that the VA wrongfully disclosed her VA medical records to VA employees. Amd. Compl. at 20; Pl. Mot. to Amd. Compl. at 8–10. The Court finds that these inter-departmental disclosures fit well within the allowable scope of routine uses set forth in the VA Privacy Act regulations.

Finally, the VA has given all veterans notice that medical records can be shared among VA medical providers and employees in this way. VHA Handbook 1605-1, entitled "Privacy and Release of Information," states that "individually-identifiable information may be used on a need to know basis within the VHA for purposes of treatment, payment, and/or health care operations without the written authorization of the individual." Privacy and Release of Information, Dept. of Veterans Affairs, Veterans Health Administration Handbook 1605-1, May 17, 2006, available at http://www.va.gov/VHAPUBLICATIONS/ViewPublication.asp?pub_ID= 1423.

McKinley specifically takes issue with the disclosure of information in her medical records to Mr. Gabriel Fields, the facilitator of the DBT program. Pl. Mot. to Amd. Compl. at 7–10. McKinley states that Mr. Fields was never part of her treatment team, and thus did not "need to know" the full details contained in her medical records. Pl. Mot. to Amd. Compl. at 10. However, her motion also states that she was considering participating in Mr. Fields's DBT program, but was reluctant to do so because Mr. Fields was a member of a religious organization from which McKinley had been excommunicated. Pl. Mot. to Amd. Compl. at 7–8. She also admits that her therapy notes indicate that McKinley had a "transference of anger" towards Mr. Fields, though McKinley claims that this is a misinterpretation of her statements about Mr. Fields's involvement in the DBT program. Pl. Mot. to Amd. Compl. at 8.

OPINION & ORDER - 16

There are numerous legitimate reasons why a medical provider within the VA would need access to VA medical records about a potential VA patient. And again, this type of inter-departmental sharing of medical information among providers, even before an official treatment relationship was established, is well within the "routine uses" set forth in the relevant VA regulations. Therefore, McKinley has not pleaded facts showing that the disclosures were "improper" under the Privacy Act. See Tungjunyatham, 500 F. App'x at 689.

Even if the disclosure to Mr. Fields did not fit under the "routine use" or "need to know" exceptions, McKinley offers nothing other than a bare conclusory allegation that the disclosure of her records to Mr. Fields was "willfully negligent." Pl. Mot. to Amd. at 8. She has not alleged any facts showing that disclosure of her medical records to Mr. Fields was done "without grounds for believing it to be lawful," or with flagrant[] disregard" for her rights under the Act, and thus her Privacy Act claim fails as a matter of law. Tungjunyatham, 500 F. App'x at 689 (citing Covert v. Harrington, 876 F.2d 751, 756 (9th Cir.1989)).

The same is true for her allegations about the disclosure of her records to other medical providers at the Portland VAMC. McKinley's third count under the Privacy Act alleges that Computerized Patient Record System ("CPRS") in use at the Portland VAMC "does not adequately protect personal information." Amd. Compl. at 21. The primary problem with "current implementation of the CPRS," McKinley alleges, is it "does not separate mental health notes and medical notes." Pl. Mot. to Amd. Compl. at 16. Her motion for leave to amend lists a number of VA medical providers who accessed her mental health records while examining her for various physical ailments. Pl. Mot. to Amend Complaint, ECF No. 33, at 16–19.

While McKinley may subjectively believe that these VA medical care providers did not need to know information about her mental health, her allegations make clear these individuals

accessed her medical information to facilitate treatment of her health conditions. Therefore, the disclosures were not made in "flagrant[] disregard" for her rights under the Privacy Act. See Tungjunyatham, 500 F. App'x at 689.

McKinley's second count against the VA under the Privacy Act alleges that a VA security officer told her information about another patient, which "was of course a violation of that man's right to privacy." Amd. Compl. at 21. This count fails because she does not have standing to assert a Privacy Act violation on behalf of another individual. McKinley concedes in her motion for leave to amend her complaint that this count fails as a matter of law. Pl. Mot. for Leave to Amd. Compl. at 15.

McKinley's fourth count under the Privacy Act alleges that unidentified individuals at the VA "responsible for policies and implementation of those policies related to, but not limited to, VA employee support, staffing, and training" violated the Privacy Act by failing to adequately train or support other VA employees in "what constitutes a violation of privacy." Amd. Compl. at 22.

Although not pleaded as such, the Court construes this allegation as a tort claim for failure to supervise and train employees. As explained previously, the FTCA "provides a limited waiver of the sovereign immunity of the United States for torts committed by federal employees acting within the scope of their employment." Nurse v. United States, 226 F.3d 996, 1000 (9th Cir. 2000) (citation omitted). "However, the FTCA's waiver of immunity is limited by a number of statutory exceptions. If [the] causes of action fall within one or more of these exceptions, then the federal courts lack subject matter jurisdiction to hear her claims." Id. (citing 28 U.S.C. § 2680).

One of these exceptions is the so-called "discretionary function exception," codified at 28 U.S.C. § 2680(a). Id. at 1001. "The discretionary function exception precludes claims against the United States which are 'based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion was abused.' " Id. (citing 28 U.S.C. § 2680(a)). Allegations that a policy-making defendant was negligent or reckless in supervising of training employees "fall squarely within the discretionary function exception." Id. (citing Gager v. United States, 149 F.3d 918, 923 (9th Cir.1998) (government's decision to forego employee training was a discretionary one); Tonelli v. United States, 60 F.3d 492, 496 (8th Cir.1995) ("Issues of employee supervision and retention generally involve the permissible exercise of policy judgment")).

Therefore, the Court lacks subject matter jurisdiction over McKinley's FTCA claim based on the alleged failure to train or supervise employees on the requirements of the Privacy Act.

Finally, although her amended complaint specifically alleges a Privacy Act claim against Robert Tell, Manager of the Outpatient Mental Health Clinic, her reply brief conceded that a claim under the Privacy Act can only be brought against the agency. Pl. Reply, ECF No. 39, at 12; see Unt v. Aerospace Corp., 765 F.2d 1440, 1447 (9th Cir. 1985) (explaining that "the private right of civil action created by the Act is specifically limited to actions against agencies of the United States Government"). Therefore, Mr. Tell is dismissed.

In sum, McKinley's Amended Complaint and motion for leave to file a second amended complaint fail to recite facts sufficient to state a claim that the VA violated her rights under the Privacy Act. Therefore, the Government's and the Individual Defendants' motions to dismiss

McKinley's Privacy Act claims are granted. Moreover, McKinley's motion to amend does not contain any additional facts from which the Court can construe a legally sufficient claim under the Privacy Act. Accordingly, her motion is denied because any amendment would be futile. Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004).

**4.  Tort Claims Against VA Police Officer Daniel Spinas**

Finally, McKinley asserts an FTCA claim for "breach of duty of care" or "negligence" against Daniel Spinas, the VA police officer who wrote the police report of January 3 incident. Pl. Resp. at 13–14. McKinley claims that Spinas's report "has too many errors, inconsistencies, and omissions, to list." Amd. Compl. at 10. She specifically takes issue with the portion of the report which indicates that Dr. Matthews reported to Officer Spinas that "McKinley told her (Matthews) she (McKinley) had a gun and threatened to kill herself or someone else." Cox Declaration, Exhibit 3, ECF No. 35-3, at 2. McKinley claims that she "specifically told [Dr. Matthews] that [she] did not have a gun." Amd. Compl. at 9. Therefore, she alleges, "either [Dr. Matthews] lied in her statement to the police or the police lied in the incident report." Amd. Compl. at 9.

Even assuming that McKinley's allegation that Officer Spinas falsified the police report is true, her claim against Officer Spinas must be dismissed. The mere existence of a false police report does not, by itself, violate any of McKinley's federal rights. See Landrigan v. City of Warwick, 628 F.2d 736, 744 (1st Cir. 1980) ("For purposes of recovering damages at least, we do not see how the existence of a false police report, sitting in a drawer in a police station, by itself deprives a person of a right secured by the Constitution and laws."). Only if the falsified police report was the basis of some future action or was disseminated in some manner would McKinley's rights have been violated. Id.

Here, Officer Spinas wrote the police report after Drs. Matthews and Turner placed McKinley under the hospital hold and after the VA police had taken her into custody. McKinley does not allege any future action based on that false report, and therefore, McKinley cannot show that Officer Spinas violated one of McKinley's "clearly established" constitutional rights. Therefore, to the extent that McKinley alleges a claim against Officer Spinas in his individual capacity, that claim fails as a matter of law because Officer Spinas is entitled to qualified immunity. Ashcroft, 131 S. Ct. at 2080.

Additionally, to the extent that McKinley seeks to sue the Government for Officer Spinas's alleged fraud, the FTCA specifically "exempts the United States from liability for fraud committed by an employee." Johnson v. United States, No. C-13-2405 EMC, 2013 WL 6502818, at *5 (N.D. Cal. Dec. 11, 2013) reconsideration denied, No. C-13-2405 EMC, 2014 WL 93948 (N.D. Cal. Jan. 9, 2014) (citing 28 U.S.C. § 2680(h); Owhnee Grazing Ass'n Inc. v. Field, 637 F.2d 694, 697 (9th Cir. 1981)). Accordingly, all of McKinley's claims against Officer Spinas are dismissed.

//

//

//

//

//

//

//

//

//

OPINION & ORDER - 21

ORDER

For the reasons stated, the Individuals Defendants' motion to dismiss [34] is GRANTED.

Individual defendants Dr. Matthews, Dr. Turner, Ms. Utterberg, Ms. Anger, Mr. Tell, and

Officer Spinas are hereby dismissed. The Government's motion to dismiss [29] is GRANTED,

and McKinley's second, third, and fifth claims for relief are hereby dismissed. McKinley's

motion for leave to file a second amended complaint [33] is DENIED because it is futile.

McKinley's medical malpractice claim against the United States for the conduct of the various

VA medical providers remains.


IT IS SO ORDERED


Dated this _____ 5 _____ day of _____ August _____, 2015.

_____

MARCO A. HERNÁNDEZ

United States District Judge